In re A.H. ROBINS COMPANY, INC.,
Debtor, Employer Tax Identification
No. 54–0486348.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

May 25, 1994.

Lisa Henningsen LaConte, Garruto & Cantor, East Brunswick, New Jersey, for Ada S. Mantush.

Melody G. Foster, Richmond, Virginia, for Dalkon Shield Claimants Trust.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on motion by Dalkon Shield Claimant **Ada S. Mantush, DS–276481,** asking the court to order the Dalkon Shield Claimants Trust ("Trust") to reinstate her claim. The Trust disallowed her claim because she failed to meet the deadline for returning an option selection form. Her prayer for relief rests on the argument that she did not actually receive any notices or correspondence from the Court or the Dalkon Shield Claimants Trust ("Trust"). The Trust has responded in opposition. For reasons given below, the Court will deny the motion.

Mantush submitted a timely claim to the Trust in 1986. She perfected her claim later that year by returning to the Trust a completed questionnaire regarding her Dalkon Shield injuries. The questionnaire form included the following notice in normal-size type above the space in which the claimant entered her address:

> Notices and requests for further information will be sent to this address unless a different address is designated.

On both the claim and the questionnaire Mantush gave her address as 43 Washington Place, Somerville, New Jersey.

In late 1986 Mantush moved from Somerville to Phillipsburg, New Jersey. She asked the Postal Service to forward her mail, but did not notify the Trust of her new address. In 1989 Mantush moved from Phillipsburg to Bloomsbury, New Jersey. She again asked the Postal Service to forward her mail, and again failed to notify the Trust of her new address.

Mantush admits receiving a copy of the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan") in Phillipsburg, which the Trust had mailed to her Somerville address. The Claims Resolution Facility, which was appended to the Plan, described the option selection process and stated:

> [A]ny claimant who fails to return the appropriate form within twelve months from the date of mailing shall have his or her claim disallowed, unless the claimant is able to demonstrate to the satisfaction of the Trustees that the failure should be excused.

Dalkon Shield Trust Claims Resolution Facility, ¶ B, found at *Plan,* Exh. C. Mantush

denies receiving any further correspondence from the Trust.

The Trust, meanwhile, tried to correspond with Mantush, using the address in Somerville which she had provided. On December 1, 1988, the Trust mailed an Option 1 information packet. On March 15, 1990 the Trust Mailed an Option Election Packet which warned Mantush that if she did not complete and return the option election form within twelve months, her claim would be disallowed. The Postal Service returned this Option Election Packet to the Trust as undeliverable.

In accordance with its standard procedure in such cases, the Trust searched its records for other possible addresses for Mantush, and tried to locate her through a national locator service. All efforts failed, and the Trust properly continued to use Mantush's address of record in Somerville. In 1991 the Trust sent three more warnings to Mantush of the impending disallowance of her claim. Only one of these was returned as undeliverable. The Trust finally disallowed her claim on July 27, 1991.

In May, 1993, Mantush, through her daughter, contacted the Trust to inquire about her claim and was told that it had been disallowed. The daughter wrote to the Trust in May and again in August, 1993, asking that her mother's claim be reinstated. The Trust refused to do so by letters in July and September, 1993.

Mantush filed this motion on March 11, 1994, by counsel. She asks the Court to order the Trust to reinstate her claim.[1] She argues that her failure to select an option by the deadline should be excused because she did not receive the notices sent by the Trust and therefore had no actual notice of the deadline.[2]

This Court has not had occasion to decide the standard to be applied in reviewing Trust actions, but it has clearly relinquished power to review day-to-day operational decisions of the Trust. Section 8.05 of the Plan, in which this Court retains jurisdiction for a number of purposes, states: "[N]othing in this Section 8.05 is intended to confer jurisdiction upon the Court over, or grant authority to monitor, the day-to-day operations of the Trusts or the Claims Resolution Facility." Therefore, as a prerequisite to obtaining relief from a decision committed to the discretion of the Trust, the movant must show facts or issues that elevate the matter above the level of ordinary operations. Mantush fails to do so.

On at least two prior occasions the Court has denied relief under strikingly similar circumstances in which the Trust had disallowed claims for failure to meet deadlines. On the first occasion the Court denied relief to Claimant Louis, saying:

> The claimant's hardship is of her own making—she failed to receive Trust and Court correspondence because for four years she failed to tell the Trust or the Court where to find her and failed to prosecute her claims with so much as a telephone call.

---

**1.** Mantush characterizes her motion as pursuant to Federal Rule of Civil Procedure 60(b). That rule authorizes relief from judgments of orders of the Court. It does not speak to relief from decisions of trustees for debtors in bankruptcy. However, the Court is aware that this bankruptcy proceeding is complex and unusual, and will not quibble over technical flaws in pleadings. .

This Court has power to hear challenges to the manner in which the Trust implements the Plan. The order confirming the Plan directs as follows:
> This Court shall retain jurisdiction in accordance with the terms of the Plan, the other provision of this Order, and Section 1142 of the [Bankruptcy] Code.

Order Confirming Debtor's Plan, ¶ 45 (July 26, 1998) (in *In re A.H. Robins Co., Inc.*, No 85–01307–R (E.D.Va.)) (accompanying Memorandum at 88 B.R. 742 (E.D.Va.1988)).

Section § 8.05 of the Plan provides that the Court retains jurisdiction to resolve disputes regarding interpretation and implementation of the Plan. Section 1142 of the bankruptcy code provides that "the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court." 11 U.S.C. § 1142(a).

**2.** Mantush also argues in an apparent afterthought that her failure to respond before the deadline should be excused on the basis of her ill health. She reports being hospitalized or otherwise receiving medical care for several days during each of the years from 1989 through 1991. The Court finds these facts and this argument to be without consequence.

*In re A.H. Robins Co. (Louis v. Dalkon Shield Claimants Trust )*, 197 B.R. 488, 490–91 (E.D.Va.1994). On the second occasion the Court rejected Claimant Harris' due process challenge to the Trust's disallowance of her claim, saying:

> The failure of actual notice is not determinative of the sufficiency of notice under due process, particularly where, as here, the failure of actual notice is due to the fault of the movant. The Trust provided notice as instructed by the movant. It is not required to do more.

*Id. (Harris v. Dalkon Shield Claimants Trust)*, 197 B.R. 491, 492 (E.D.Va.1994). Mantush's situation is indistinguishable from the situation of Claimants Louis and Harris.

For these reasons, the Court finds no cause to disturb the decision of the Trust to disallow Mantush's claim and will deny her request for relief.