In re **A.H. ROBINS COMPANY, INCOR-PORATED,** Debtor, Employer's Tax Identification No. 54–0486348.

**DALKON SHIELD CLAIMANTS TRUST,** Movant,

v.

**Anita BAKER, et al.,** Respondents.

No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 26, 1995.

Neil Rossman, Rossman, Rossman, & Eschelbacher, Boston, Massachusetts, for Anita Baker, et al.

Òrran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

### *MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on a Motion by the Dalkon Shield Claimants Trust ("Trust") for an Order Implementing the Plan and the Claims Resolution Facility ("CRF") regarding thirty-eight Dalkon Shield Claimants represented by attorney Neil Rossman ("Rossman"). The Trust moves this Court for an Order: (1) sustaining the Trust's binding election policy; (2) enjoining any litigation activity by Rossman claimants who have been certified for litigation but who have not yet filed lawsuits; and (3) enjoining litigation activity by Rossman claimants who become certified for litigation in the future as is necessary to relieve docket conditions caused by multiple claimants seeking trial in the United States District Court for the District of Massachusetts.

For the reasons discussed below, the Motion will be Granted.

### I.

On July 14, 1995, Rossman appeared before the Honorable Joseph L. Tauro, Chief Judge of the United States District Court for the District of Massachusetts, for a scheduling conference on the fourteen Dalkon Shield cases pending before his court. At this conference, Rossman stated that he anticipated there would eventually be fifty to sixty Dalkon Shield cases proceeding to trial before Judge Tauro. In light of this "backlog of cases", Rossman further explained that all of his clients were willing to switch from litigation and go forward with binding arbitration.

In response, the Trust, through its local counsel Paul F. Strain, explained to Judge Tauro that any "backlog of cases" was the result of Mr. Rossman's own doing. He explained that Rossman had ample opportunities to elect arbitration but had never done so. He further noted that Rossman had "grouped" together the certification of his cases, and delayed bringing them to trial, thus causing this supposed backlog. Mr. Strain finally explained that all of Rossman's clients had freely signed binding election forms and that the Trust planned to hold them to that decision.

Judge Tauro was obviously interested in the prospect of clearing cases from his docket and sending them to binding arbitration. Judge Tauro advised both parties to take the issue before this Court for a proper resolution of the problem.

### II.

Under the CRF, all claimants choosing Option 3 receive an early evaluation offer from the Trust. The claimant may accept or reject this offer. If she rejects the early offer, she may then either resolve her claim through Alternative Dispute Resolution ("ADR") or proceed with the In–Depth Evaluation Offer/Voluntary Settlement Conference stage.[1] After this In–Depth Review and Settlement Conference stage, the Trust makes a final Option 3 offer which the claimant may either accept or reject. If the claimant rejects this offer, she then must elect between ADR, arbitration, or litigation.

At every step of this process, the Trust sends detailed materials to the Claimants and their counsel explaining their choices and the consequences of each. Part of the materials sent to each Claimant was a Claims Resolution Election Form ("Election Form"). On this form, the Claimant was to indicate her choice among ADR, arbitration and trial. The binding nature of this choice was made clear to all Claimants. The Trust included in all of election forms one of the following two warnings:

1) **WARNING: Please make your choice carefully. It is binding and cannot be changed; however, under certain conditions, claimants may move from Trial or Binding Arbitration to ADR.** *or*

2) **You must elect one of the following options. Please elect *only one* option and carefully make your choice. Your election is binding. In certain circumstances, however, you may change your election from Trial or Binding Arbitration to Alternative Dispute Resolution ("ADR").**

Along with the election forms, the Trust also sent a letter explaining each claimant's choices and including the same warning language as above.

### III.

Movant's motion alleges that Rossman currently represents thirty-eight Dalkon Shield Claimants who have rejected Option 3 offers, elected to proceed with litigation under § E.5(b) of the CRF, and have been certified by orders from this Court to proceed with litigation. Twenty-five of these claimants had cases pending in the United States District Court for the District for the District of Massachusetts when A.H. Robins filed its Chapter 11 petition. These twenty-five Claimants actually amount to fourteen cases, however, since husbands and wives filed suit together. The remaining claimants shown in Movant's Exhibit A have yet to initiate litigation in Massachusetts. Assuming they do,

---

1. CRF § E.4.

and husbands and wives file together, this will result in eleven more Rossman cases being filed in the United States District Court for the District of Massachusetts. This results in a total of twenty-five potential cases before Judge Tauro, a far cry from the fifty to sixty alleged by Rossman.

Each of Rossman's thirty-eight clients signed the election forms discussed above. All of these Claimants also elected to proceed with litigation. None ever elected arbitration.

## IV.

The Trustees' implementation of a binding election policy was a purely discretionary decision. A deferential standard of review is, therefore, appropriate in reviewing such a decision. *In re A.H. Robins Co.*, 42 F.3d 870, 875 (4th Cir.1994). Although this Court retained jurisdiction over the Trust and the Plan for many purposes, that retained jurisdiction expressly excludes authority over, and authority to monitor, the day-to-day operations of the Trust. Authority over day-to-day operations rests with the Trust. The Trust has responsibility for resolving all Dalkon Shield Claims. The Claims Trust Agreement grants the Trustees broad authority to act as they "deem reasonably necessary or desirable for the proper management of the Trust." CTA 4.03(b).

This Court has recently decided a number of cases where claimants have requested relief from day-to-day operations of the Trust. In *Mantush v. Dalkon Shield Claimants Trust,* 197 B.R. 493 (E.D.Va.1994), this Court held that "as a prerequisite to obtaining relief from a decision committed to the discretion of the Trust, the movant must show facts or issues that elevate the matter above the level of ordinary operations." *Id.* at 494.

An appropriate Order will follow.

## ORDER

This matter is before the Court on the motion of the Dalkon Shield Claimants Trust seeking an Order implementing the Plan and the Claimants Resolution Facility ("CRF") regarding a number of Dalkon Shield Claim-

ants represented by Attorney Neil Rossman. Movant's motion represented that there are thirty-eight Dalkon Shield claimants who have rejected the Trust's Option 3 offers; electing litigation under Section E.5(b) of the CRF additionally, the instant motion suggested that Attorney Rossman had a substantial number of additional Dalkon Shield claims which have been certified by this Court for litigation. The Court, having heard the parties by counsel, concludes as a fact that there are ten to twelve present or potential cases either pending or may be pending before the United States District Court for the District of Massachusetts. Mr. Rossman has suggested that the Court has the power to overrule the policy of the Trust, which does not permit claimants to move from their selection of trial to arbitration. In addition, Mr. Rossman suggests certain changes in the arbitration procedures. The Court is satisfied that it has no such authority as suggested and, additionally, has concluded that the District of Massachusetts will more than likely entertain litigation of approximately ten to twelve cases instituted by Mr. Rossman.

As suggested by the Trust, the Court is also satisfied that it would be inappropriate to continue its Order of August 2, 1995, that the Trust's binding election policy, which effectively precludes claimants from changing their mode of adjudication once they have made an election, be and the same is hereby SUSTAINED as being required by the rules by which the Trust is bound.

IT IS ADJUDGED AND ORDERED that this Court's Order of August 2, 1995 denying certification to certain claimants in the United States District Court for the District of Massachusetts be and the same is hereby VACATED.